1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT GEORGE CURTIS,<br><br>**Plaintiff**<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation, and HD DEVELOPMENT OF MARYLAND, INC., a Maryland corporation d.b.a. HD Properties of Maryland,<br><br>**Defendants** | CASE NO. 1:13-CV-1151 AWI GSA<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Doc. Nos. 43, 46) |

This is a disability related lawsuit brought by Plaintiff Albert Curtis ("Curtis") against Defendants Home Depot U.S.A., Inc. and HD Development of Maryland, Inc. (collectively "Home Depot"). Curtis alleges violations of Title III of the Americans with Disabilities Act ("ADA"), as well as violation of California law. Curtis initially identified 29 barriers at a Home Depot store, but through stipulation by the parties, only 10 barriers remain in dispute. See Doc. No. 52. Now before the Court are the parties' cross motions for summary judgment. For the reasons that follow, the motions will be granted in part and denied in part.

## BACKGROUND[1]

Curtis is a disabled individual. See JUMF 1. Curtis is paralyzed from his mid-section

---

[1] "JUMF" refers to Joint Undisputed Material Fact, "PUMF" refers to Plaintiff's Undisputed Material Fact, and "DUMF" refers to Defendant's Undisputed Material Fact. The parties have objected to some of the submitted evidence. If the Court relies on evidence to which objections have been made, the objections are deemed overruled.

1  down to his feet and uses a manual wheelchair for mobility.  See PUMF's 1, 3, 4.  The Home

2  Depot store located at 3500 Demaree St., Visalia, California ("the Store") has areas that are open

3  to the public, which are places of public accommodation.  JUMF 2.  The Store was built in 1995-

4  1996, and therefore the new construction guidelines identified in the 1991 Americans with

5  Disabilities Act Accessibility Guidelines ("ADAAG"), found at 28 C.F.F. Part 36 App. A, apply

6  to the Store for purposes of determining whether a violation of the ADA existed at the time of

7  Curtis's visits to the Store and whether any violations of the ADA continue to exist.  See JUMF 3.

8  Curtis visited the Store on April 3, 2013, see JUMF 5, made two visits in March 2013, made two

9  visits in May 2013, and made two visits in June 2013.  See PUMF 7.  In addition to these visits,

10  Curtis has visited the Store on numerous occasions.  See PUMF 8, 37.  Curtis has been patronizing

11  the Store prior to 2000, and plans to return and continue to patronize the Store.  See PUMF 40, 41.

12  Curtis generally has a need to shop at the Store about once a month.  See Curtis Dec. ¶ 34.

13       The area in front of the Store marked with yellow hash marks is the accessible route from

14  the accessible parking area to the Store's main entrance.  PUMF 9.  During each of Curtis's

15  documented visits to the Store, Curtis found that the accessible route from the accessible parking

16  area to the entrance to the Store, as well as the entrance to nursery, were obstructed by

17  merchandise for sale placed in the accessible route.  See PUMF's 3, 5, 7, 10.  Home Depot

18  obstructed the accessible route around Christmas 2013 by placing a Christmas Tree display within

19  the route.  See PUMF 13.  The Store's accessible route was also obstructed by merchandise in

20  August 2007.  See PUMF 14.  The accessible route from the accessible parking area was often

21  reduced to zero width due to displays of merchandise.  See PUMF 49.  When the accessible route

22  was blocked by merchandise during Curtis's visits, Curtis would have to move his manual

23  wheelchair into the area used by vehicles in order to get into the Store.  See PUMF 50; see also

24  PUMF 55.  Curtis has complained to Store management for years about their placing merchandise

25  in the accessible path, but nothing has been done.  See PUMF 43.  At some point, Curtis had a

26  conversation with a Store manager named Brent about the lack of an accessible route.  See PUMF

27  44.  Brent was rude and stated that Home Depot could do whatever it wanted to do and had no

28  obligation to move the merchandise to provide Curtis with an accessible route of travel.  See id.

1   A written policy was provided to Store employees via e-mail prior to Store Manager

2   Joseph Wall's April 2014 deposition.  See PUMF 15.  The written policy requires that the path of

3   travel to the entrance be kept clear.  See id.  For at least 5 years, Home Depot has had a policy of

4   keeping the accessible route clear of obstructions.  See PUMF 16.

5

6   **LEGAL FRAMEWORK**

7   Cross motions for summary judgment are evaluated separately under the same standards

8   that apply to single summary judgment motions.  See Pintos v. Pacific Creditors Ass'n, 565 F.3d

9   1106, 1111 (9th Cir. 2009); ACLU v. City of Las Vegas, 466 F.3d 784, 790 (9th Cir. 2006).

10  Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to

11  any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

12  P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-

13  Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears

14  the initial burden of informing the court of the basis for its motion and of identifying the portions

15  of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine

16  issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty

17  Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome

18  of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

19  (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to

20  a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-

21  moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d

22  509, 514 (9th Cir. 2010).

23  Where the moving party will have the burden of proof on an issue at trial, the movant must

24  affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.

25  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an

26  issue at trial, the movant may prevail by presenting evidence that negates an essential element of

27  the non-moving party's claim or by merely pointing out that there is an absence of evidence to

28  support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Herbert

3

1   Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.  If a moving party

2   fails to carry its burden of production, then "the non-moving party has no obligation to produce

3   anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan

4   Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party

5   meets its initial burden, the burden then shifts to the opposing party to establish that a genuine

6   issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio

7   Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest

8   upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

9   forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope

10  Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

11          The opposing party's evidence is to be believed, and all justifiable inferences that may be

12  drawn from the facts placed before the court must be drawn in favor of the opposing party. See

13  Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899

14  (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive

15  inference, a "justifiable inference" must be rational or reasonable.  See Narayan, 616 F.3d at 899.

16  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

17  factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551

18  F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993,

19  997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because

20  a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen

21  Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health

22  System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment

23  may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"

24  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).

25  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material

26  fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

27

28

1                                     **CROSS-MOTIONS**

2 **A.**       **BARRIERS**

3        *Defendant's Arguments*

4          Home Depot argues that summary judgment is proper because the alleged remaining

5 barriers are either not actually barriers or have been remedied.  For those barriers which have been

6 remedied, claims based on such barriers are now moot.  Because there are no violations of the

7 ADA, the Court should grant summary judgment on all of the ADA claims and decline to exercise

8 supplemental jurisdiction over Curtis's state law claims.

9        *Plaintiff's Arguments*

10          Curtis argues that the evidence shows that ADA violations remain.  Curtis argues that

11 Home Depot does not address his contention that some barriers are reoccurring, despite policies to

12 the contrary.  Furthermore, measurements taken by Home Depot were not properly converted into

13 percentages (as opposed to angles), and upon proper conversion, violations of the ADAAG are

14 apparent.  Because the evidence affirmatively establishes violations of the ADA and California

15 law, Curtis argues that he should be awarded $4,000 in statutory damages, be granted declaratory

16 relief, and be granted an injunction that remedies the identified barriers.

17        *Legal Standard*

18          Title III of the ADA (42 U.S.C. § 12181 et seq.) prohibits discrimination on the basis of

19 disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages,

20 or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a); Oliver v.

21 Ralphs Grocery Co., 654 F.3d 903, 904 (9th Cir. 2011).  The ADA requires that new business

22 facilities be "readily accessible to and usable by individuals with disabilities," unless this would be

23 "structurally impracticable." 42 U.S.C. § 12183(a)(1); Oliver, 654 F.3d at 905; see Chapman v.

24 Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011).  "In general, a facility is readily

25 accessible to and usable by individuals with disabilities if it meets the requirements . . . in the

26 ADAAG, which is essentially an encyclopedia of design standards."  Oliver, 654 F.3d at 905.  For

27 businesses built after January 26, 1993, new construction and alterations must comply with the

28 applicable ADAAG.  See Antoninetti v. Chipotle Mexican Grill, Inc., 614 F.3d 971, 976 (9th Cir.

1    2010).  If a place of public accommodation is inconsistent with the applicable ADAAG standards,

2    then a plaintiff may bring a civil action on the basis that the offending design feature constitutes a

3    barrier that denies full and equal enjoyment of the premises.  Oliver, 654 F.3d at 905; see Molski

4    v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  As long as the plaintiff has encountered

5    one barrier, he may seek relief for unencountered barriers as well.  Chapman, 531 F.3d at 944.  A

6    private plaintiff can only obtain injunctive relief (i.e. removal of the barrier) under Title III of the

7    ADA, and may not obtain monetary damages.  Oliver, 654 F.3d at 905; Molski, 481 F.3d at 730.

8    As such, "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of

9    mooting [an] ADA claim."  Oliver, 654 F.3d at 905; see Chapman v. Starbucks Corp., 2011 U.S.

10   Dist. LEXIS 3570, *11 (E.D. Cal. Jan. 6, 2011); Hubbard v. 7-Eleven, Inc., 433 F.Supp.2d 1134,

11   1145 (S.D. Cal. 2006); Parr v. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1087 (D. Haw.

12   2000); Independent Living Res. v. Oregon Arena Corp., 982 F.Supp. 698, 771 (D. Or. 1997).

13   Courts often find that the voluntary cessation exception to mootness does not apply once an ADA

14   barrier has been removed because of the expense and nature of the removal makes it highly

15   unlikely that the barrier will reoccur.  See Hickman v. Missouri, 144 F.3d 1141, 1143-44 (8th Cir.

16   1998); Houston v. 7-Eleven, Inc., 2014 U.S. Dist. LEXIS 12209, *2-*3 (S.D. Fla. Jan. 31, 2014);

17   Independent Living, 982 F.Supp.2d at 774.

18       *Discussion*[2]

19       In December 2013, Curtis's expert Michael Bluhm visited the Store and detected a number

20   of alleged barriers.  In August/September 2014, the Store's Manager Joseph Wall ("Wall")

21   declared that various corrective actions by Home Depot had been taken.  Wall, and Home Depot's

22   attorney Allison Kleaver ("Kleaver"), submitted declarations and new pictures of the alleged

23   barriers identified by Bluhm during his December 2013 visit.  In December 2014, Bluhm re-

24   visited the Store and took additional measurements. The essence of the parties' dispute is whether

25   _____

26   [2] There is no dispute between the parties that the ADAAG applies in this case.  JUMF 2.  Curtis contends that an older
     version of the ADAAG, known as the 1991 ADAAG, applies to determine the existence of a barrier, but any
     injunctive relief would be governed by the standards adopted in 2012, known as the 2010 ADAAG.  Home Depot, in

27   both its motion and opposition, cites exclusively to the 2010 ADAAG, but does not dispute Curtis's assertions
     regarding the 1991 ADAAG.  Given the parties' apparent agreement, unless the Court notes a distinction between the
     1991 ADAAG and 2010 ADAAG, a reference to the 2010 ADAAG should be understood as meaning that the 1991

28   ADAAG imposed an essentially identical requirement.

1   ten alleged ADA barriers are now moot because of Home Depot's corrective actions.  The Court

2   will address the ten alleged barriers separately.[3]

3           1.      Obstruction of Accessible Route – FAC ¶ 10(a)

4           Under the 2010 ADAAG, an accessible route must be at least 36" wide, although the route

5   may be reduced to 32" wide for a length of no more than 2 feet.  See 2010 ADAAG § 403.5.1.[4]

6   Department of Justice regulations for Title III of the ADA require public accommodations to

7   "maintain in operable working condition those features of facilities and equipment that are

8   required to be readily accessible to and usable by persons with disabilities."  28 C.F.R. §

9   36.211(a); Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 858 (N.D. Cal. 2012).  It is not

10  sufficient to provide an accessible route if that feature is not maintained in a manner that enables

11  individuals with disabilities to use it.  Moeller, 816 F.Supp.2d at 858.  Failing to properly maintain

12  an accessible route, including keeping the route free of obstructions, may violate the ADA.  Id.

13  However, there is no liability for "isolated or temporary" interruptions to accessibility.  28 C.F.R.

14  § 36.211(b); Chapman v. Pier 1 Imports, 870 F. Supp. 2d 995, 1008 (E.D. Cal. 2012).

15          Here, there is no dispute that the accessible pathway in front of the Store is slightly wider

16  than 48 inches wide.  See Wall Dec. ¶ 5 & Ex. 1.  There is also no dispute that the Store has a

17  policy against obstructing accessible routes.  See Wall Dec. Ex. 2.  In pertinent part, the policy

18  prohibits "the placement of merchandise, product displays, or shopping carts on the sidewalks or

19  wheelchair accessible parking and the [Store] entrance and exit, or in the accessible areas of the

20  parking lot."  Id.  This evidence indicates that there are no current violations concerning the width

21  of accessible routes to the Store.

22          Nevertheless, the evidence does not show that Home Depot adequately maintains a 36"

23  _____

24  [3] Bluhm has submitted two declarations, and Wall has submitted three declarations.  Bluhm's first declaration is Doc.
    No. 43-6, and it details his findings from the December 2013 visit.  The Court will refer to this declaration as "Bluhm
25  Dec."  Bluhm's second declaration is Doc. No. 53-3, and it details the results of the December 2014 visit.  The Court
    will refer to this declaration as "Bluhm Opp. Dec."  Wall's first declaration is Doc. No. 46-5.  The Court will refer to
26  this declaration as "Wall Dec."  Wall's second declaration is Doc. No. 54-1, and it details the work that Home Depot
    completed in August/September 2014.  The Court will refer to this declaration as "Wall Opp. Dec."  Wall's third
27  declaration is Doc. No. 55-2, and it responds to several aspects of the second Bluhm declaration.  The Court will refer
    to this declaration as "Wall Rep. Dec."

28  [4] The California Building Code ("CBC") requires that the width of an accessible route be 48 inches.  See CBC § 11B-
    403.5.1.  The CBC is codified at California Code of Regulations, Title 24, Part 2.

1    width.  First, Curtis's declaration indicates that he has experienced an "obstructed route" (a route

2    whose width is less than regulatory limits) on numerous occasions, including during 2012 and

3    2013.  See Curtis Dec. ¶¶ 13, 18, 22-28.  Photographs taken by Curtis also affirmatively show

4    obstructions in the form of merchandise (barbecue grills, lawn mowers, and large boxes) in the

5    accessible route.  See Curtis Dec. Exs B-G.[5]  Although there were no measurements taken with

6    respect to the photographs, it is generally apparent that the width is considerably less than 32".

7    See id.  Also, Curtis has been utilizing a wheelchair sufficiently long to opine whether an area is

8    less than 32" wide, and he declares that he regularly encounters obstructions that narrow the width

9    of the route to less than 32".  See id. at ¶¶ 16, 22-28; cf. Strong v. Valdez Fine Foods, 724 F.3d

10   1042, 1046 (9th Cir. 2013) (disabled person's experience was a sufficient basis to opine regarding

11   measurements of possible barriers).  Second, the photographic evidence and Curtis's declaration

12   do not demonstrate a stray piece of merchandise that a customer may have left in the route, rather

13   they demonstrate the deliberate placement of merchandise for sale by Home Depot.  Such

14   deliberate placement of merchandise by Store employees is not "temporary or isolated."  See

15   Chapman, 870 F.Supp.2d at 1009-10.  Given these considerations, Curtis has shown that Home

16   Depot violated 2010 ADAAG § 403.5.1 and 28 C.F.R. § 36.211(a) by not maintaining an

17   unobstructed accessible route.

18        Again, there is no evidence that Home Depot is currently violating 2010 ADAAG 403.5.1

19   and 28 C.F.R. § 36.211(a).  However, the Court cannot agree that Home Depot's voluntary

20   cessation of the offending conduct has mooted the issue.  Under the voluntary cessation exception

21   to mootness, mere cessation of illegal activity in response to pending litigation does not moot a

22   case unless it is shown that the "allegedly wrongful behavior could not reasonably be expected to

23   recur."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000);

24   Rosemere Neighborhood Ass'n v. EPA, 581 F.3d 1169, 1173 (9th Cir. 2009).

25        Here, Home Depot argues that its policy against obstruction combined with the acts of

26   Wall in inspecting the route show that the route is maintained and the issue is moot.  The Court

27   _____

28   [5] One of the exhibits shows a car parked in the accessible route.  However, the car is not a Home Depot car, and the
     car appears to have been improperly parked by a customer.  This photograph appears to depict a temporary barrier that
     is not actionable under 28 C.F.R. § 36.211(b).

1   disagrees.  Wall testified at his deposition that Home Depot has had some policy against

2   obstructing accessible routes for about 5 years.  See Wall Depo. 165:24-166:8.  However, Curtis

3   declared that he has complained to Store management about obstructions in the accessible routes

4   from merchandise and displays for the last 2 to 3 years, but the problem was not remedied.  See

5   Curtis Dec. ¶¶ 18-19.  In fact, one manager was extremely dismissive of Curtis and denied that

6   there was even a problem with merchandise obstructing the accessible route.  See id. at ¶ 20.

7   These complaints would have been made at a time when a Home Depot policy against obstruction

8   was in place.  See Wall Depo. 165:24-166:8; Curtis Dec. ¶¶ 18-20.  In other words, whatever

9   policy was in force did not prevent Curtis from experiencing non-temporary obstructions on

10  numerous occasions, nor did the existence of the policy change results when Curtis complained to

11  store managers.  Further, the policy that has been produced for the Court's review was apparently

12  shown to Wall for the first time a few months before his April 2014 deposition.  See Wall Depo.

13  134:22-136:25.  This suggests that the policy is not commonly known to Home Depot employees

14  and managers, and that there is a new emphasis on keeping accessible routes free from

15  obstruction.  Finally, unlike other barriers, Home Depot could easily revert to obstructing the

16  accessible routes through placement of merchandise or displays.  The barrier involved is not so

17  much structural in nature, as it is a maintenance issue.  Redesign, new construction, renovation, or

18  any type of structural modification is not necessary in order to keep the accessible route

19  unobstructed with merchandise.  Obstruction merely depends on Home Depot ordering an

20  employee to place merchandise in or near the accessible route.   Given the nature of the barrier,

21  what appears to be a relatively new policy, and Curtis's experiences despite a 5-year old policy

22  against obstruction, Home Depot's voluntary cessation of obstructing the accessible route does not

23  moot the controversy.  Cf. Hickman, 144 F.3d at 1144 (noting that the ADA compliance in that

24  case was "far more than a mere voluntary cessation of an alleged illegal conduct, where we would

25  leave the defendants free to return to their old ways," and noting that the resumption of the

26  challenged conduct "does not depend solely on the defendants' capricious actions.").

27          Because the issue is not moot, and Curtis has shown improper maintenance of the

28  accessible route to the Store entrance, summary judgment in favor of Curtis is appropriate.

2.      Accessible Route From Accessible Parking Area – FAC ¶ 11(b)

Under the 2010 ADAAG, an accessible route of at least 36" in width must be provided from *inter alia* accessible parking to an accessible entrance.  See 2010 ADAAG §§ 206.2.1, 403.5.1.  Like the previous barrier, there is no dispute that the actual route is at least 36" wide; the dispute is whether the route is maintained at a 36" width.

Curtis relies on the same evidence to establish an obstruction in this route as he did with the previous accessible route.  See Plaintiff's Motion (Doc. No. 43-1) at p.11.  In the absence of clarification from the parties, the Court views the accessible Store entrance route to be part of the accessible route that leads from the parking area to the Store entrance.  Again, the photographic evidence presented shows that merchandise has obstructed the accessible route that runs along the front of the Store, and Curtis's declaration shows that he has encountered this problem on numerous occasions despite complaints to management.  Curtis's evidence shows that Home Depot has not adequately maintained the accessible route as required by 28 C.F.R. § 36.211(a).

For the same reasons discussed above, the evidence shows that Home Depot has not adequately maintained the accessible route so as to keep it free of non-temporary obstructions that reduce it to less than 36".  Summary judgment in favor of Curtis on this claim is appropriate.

3.      Caldwell Ave. Curb Ramp Slope – FAC ¶ 11(d)

Under the 2010 ADAAG, curb ramps may not have a running slope steeper than 1:12, or 8.33%.  See 2010 ADAAG § 405.2, 406.1.  There is an accessible route with a curb ramp from the public sidewalk on Caldwell Ave. to the Store's entrance that is at least 36" wide.  See DUMF 6.

In December 2013, Bluhm measured the slope of the curb ramp to be 10.1%.  See Blum Dec. ¶ 8 & Ex. B.  In August 2014, the curb ramp was rebuilt and resloped.  See Wall Opp. Dec. ¶ 8.  Wall measured the slope of the curb ramp to be 6.2%.  See id. at Ex. 4.  In September 2014, Kleaver measured the slope, and found that it was 4.8°.  See Kleaver Dec. Ex. 4.  Bluhm has declared that when 4.8° is converted to a percentage, the slope is actually 8.4%.  See Blum Op. Dec. ¶ 11.[6]  Additionally, when Bluhm revisited the Store in December 2014, he re-measured the

---

[6] Additionally, the Court notes that Bluhm is critical of Kleaver giving measurements in degrees, using a Husky brand smart level, and taking some measurements while the level was on debris.  See Bluhm Opp. Dec. ¶¶ 8-12.

1 slope of the ramp curb and found that it measured 9.6%.  See id. at ¶ 13 & Ex. B.

2          There is no doubt that 6.2% is within the regulatory limit, but a slope of 8.4% and a slope

3 of 9.6% both exceed the maximum regulatory slope.[7]  The Court is faced with conflicting

4 measurements.  The Court cannot resolve the conflicting measurements through a summary

5 judgment motion.  Viewing the evidence through the prism of summary judgment, the Court must

6 deny both motions for summary judgment.

7          <u>4.</u>         <u>Cross-Slope Along Accessible Entry Route – FAC ¶ 11(e)</u>

8          Under the 1991 ADAAG, cross-slopes on an accessible route cannot exceed 1:50, or 2.0%.

9 <u>See</u> 1991 ADAAG § 4.3.7.  Under the 2010 ADAAG, cross-slopes on an accessible route cannot

10 exceed 1:48, or 2.08%.  <u>See</u> 2010 ADAAG § 403.3.

11          During his December 2013 visit, Bluhm measured two cross-slopes of the Store entry

12 walkway.  <u>See</u> Bluhm Dec. ¶ 9.  Bluhm obtained slope measurements of 2.4% and 3.1%.  <u>See</u> <u>id.</u>

13 & Ex. C.[8]  In August 2014, the area of the walkway where Bluhm took his measurements was

14 resurfaced.  <u>See</u> Wall Dec. ¶ 10.  Wall measured the two cross-slopes of the resurfaced entry

15 walkway, and obtained measurements of 1.5% and 1.9%.  <u>See</u> Wall Dec. ¶ 9 & Ex. 5.  In

16 September 2014, Kleaver measured the cross-slopes to be 1.6º and 1.7º.  <u>See</u> Kleaver Dec. ¶ 9 &

17 Ex. 4.  Bluhm declares that converting 1.6º and 1.7º to percentages yields slopes of 2.79% and

18 2.97%, respectively.  <u>See</u> Bluhm Opp. Dec. ¶¶ 14, 15.  There is no indication that Bluhm re-

19 measured the cross-slope of the entry walk-way during his December 2014 re-visit.  <u>See</u> Bluhm

20 Opp. Dec.

21          The Court is again faced with conflicting measurements.  The measurements taken by Wall

22 show Home Depot is in compliance, as 1.5% and 1.9% are obviously less than 2.0%.  However,

23 Bluhm's December 2013 measurements, and Kleaver's measurements when converted from

24 degrees to percentages, show cross-slopes greater than 2.0%.  The Court cannot resolve the

25

26 [7] The Court notes that the slope measurements taken in this case appear to have been made to the nearest tenth, even though the 2010 ADAAG slope is measured in hundredths.  Converting a 8.33% slope into degrees yields a figure of

27 4.76º.  Rounded to the nearest tenth, 4.76º becomes 4.8º.  However, there has been no evidence regarding the settings of Kleaver's level, or that the level is designed to measure to the nearest tenth of a degree.

28 [8] Exhibit C attempts to depict measurements, but the readings of the smart level are illegible.

1  conflicting measurements through a summary judgment motion.  Viewing the evidence through

2  the prism of summary judgment, the Court must deny both motions for summary judgment.

3       5.    Cross-Slope Of Parking Stall – FAC ¶ 11(g)

4      Under the 1991 ADAAG, accessible parking spaces and aisles cannot contain slopes that

5  exceed 1:50, or 2.0%.  See 1991 ADAAG 4.6.3.  The 2010 ADAAG mandates that cross-slopes in

6  parking spaces and accessible aisles cannot exceed 1:48, or 2.08%.  See 2010 ADAAG § 502.4.

7      In December 2013, Bluhm measured the cross-slopes of a parking stall and

8  loading/unloading accessible aisle.  See Bluhm Dec. ¶ 11.  Bluhm obtained measurements for

9  these cross-slopes ranging between 2.4% and 2.6%.  See id. & Ex. E.[9]  In August 2014, the

10  northwest parking stall was undesignated as an accessible parking area.  See Wall Dec. ¶ 11.  Wall

11  measured the southwest accessible stall and obtained a slope measurement of 1.4%.  See id. & Ex.

12  7.  In September 2014, Kleaver measured the cross-slope of the southwest accessible parking stall

13  to be 1.4°.[10]  See Kleaver Dec. ¶ 11 & Ex. 7.  Bluhm declares that converting 1.4° to percentages

14  yields a figure of 2.44%.  See Bluhm Opp. Dec. ¶ 16.  There is no indication that Bluhm re-

15  measured the cross-slope of the southwest parking stall during his December 2014 visit.

16      The Court is again faced with conflicting measurements.  The measurements taken by Wall

17  show Home Depot to be in compliance, as 1.4% is obviously less than 2.0%.  However, Bluhm's

18  December 2013 measurements, and Kleaver's measurements when converted from degrees to

19  percentages, show a cross-slope greater than 2.0% for the southwest accessible parking stall.  The

20  Court cannot resolve the conflicting measurements through a summary judgment motion.

21  Viewing the evidence through the prism of summary judgment, the Court must deny both motions

22  for summary judgment.

23       6.    Exterior Food/Beverage Counter Height – FAC ¶ 11(i)

24      Under the 2010 ADAAG, a sales and service counter cannot exceed a height of 36", for

25  either a forward or parallel approach.  See 2010 ADAAG §§ 904.4.1, 904.4.2.

26

[9] Exhibit E only depicts a measurement of 2.6%.

27

[10] Exhibit 6 to Kleaver's declaration is not clear.  A reading of 1.4 is apparent, but unlike other photos, it is not clear

28  that the 1.4 reading is in degrees.  Given Home Depot's failure to challenge Bluhm's assertion that the 1.4 reading is a
measurement in degrees, the Court will read Exhibit 6 as showing 1.4°.

1    During Bluhm's initial visit to the Store, there was one counter at the exterior food and

2    beverage stand.  See Bluhm Dec. ¶ 13.  The counter's height is 57".  After Bluhm's initial visit, a

3    second counter located on the left-side of the food stand was added.  See Wall Opp. Dec. ¶ 13;

4    Bluhm Opp. Dec. ¶ 18.  The height of the second counter is slightly more than 33".  See Wall

5    Opp. Dec. ¶ 13 & Ex. 8.

6        Curtis argues that this second counter is not an "equivalent facilitation" because it is

7    inferior to the first counter in every way.  The first counter offers menus, impulse buy items, and

8    product displays.  The second counter has none of these amenities. Further, the second counter is

9    around the corner and completely separates disabled individuals from non-disabled individuals.  In

10   reply, Wall declares that the first counter is located along the front walkway and the second

11   counter is located next to the dining seating area of the food stand.  See Wall Rep. Dec. ¶ 6.  Wall

12   declares that both counters offer the same services, meaning that the customers can purchase and

13   pay for food and beverages and receive their food orders at both counters.  See id.  The menu

14   board for the food stand is located to the side of the first/front walkway counter, and not at one

15   counter or the other.  See id.  In Wall's experience, customers typically view the menu board prior

16   to approaching one of the counters to place an order.  See id.  Further, display signs that were

17   present at the first counter during Bluhm's first visit are no longer present.  See id.

18       The 1991 ADAAG § 2.2 states in part that "departures from particular technical and

19   scoping requirements of the ADAAG by the use of other designs and technologies are permitted

20   where the alternative designs and technologies used will provide substantially equivalent or

21   greater access to and usability of a facility."  1991 ADAAG § 2.2.  The 2010 ADAAG § 103 states

22   that nothing "prevents the use of designs, products, or technologies as alternatives to those

23   prescribed, provided that they result in substantially equivalent or greater accessibility and

24   usability."  See 2010 ADAAG § 103.  The burden of establishing "equivalent facilitation" rests on

25   the defendant.  See Independent Living, 982 F.Supp. at 727.

26       Contrary to Curtis's argument, it is not necessary for Home Depot to provide a wholly

27   equivalent design to that mandated by 2010 ADAAG § 904.4.1.  Home Depot must provide a

28   design that is "substantially equivalent."  Wall's reply declaration describes a counter that

1  complies with the relevant height restrictions, and one that appears to provide equivalent services.

2  Further, signs and displays that were present during Bluhm's initial visit have been removed, and

3  the indication is that no signs and displays are part of any counter.  Finally, the location of the

4  second counter is not the same as the first, but Wall's declaration describes a location that appears

5  to be desirable, since it is close to a seating area and the first counter.  In other words, Wall's reply

6  declaration indicates that the second counter is "substantially equivalent" to the first counter.

7       Nevertheless, Wall's reply declaration contains no photographs of the second counter, and

8  Curtis has not had an opportunity to respond to Wall's reply declaration.  Because the Court does

9  not feel that Curtis has had a sufficient opportunity to address the new evidence, the Court will

10  deny summary judgment.[11]

11       7.    Cross-Slope of Exterior Food/Beverage Counter – FAC ¶ 11(j)

12       Under the 1991 ADAAG, accessible elements must be connected by accessible routes that

13  have slopes of no more than 1:50, or 2.0%.  See 1991 ADAAG 4.3.2(2), 4.3.7.  Under the 2010

14  ADAAG, accessible elements on a site must be connected by an accessible route and cannot have

15  a slope greater than 1:48, or 2.08%.  See 2010 ADAAG § 206.2.2, 403.3.

16       In Home Depot's opposition, Wall declared that the slope in front of the second counter

17  was less than 2.08%.  See Wall Opp. Dec. ¶ 13 & Ex. 9.  Bluhm's opposition declaration does not

18  address this measurement, nor does Curtis.  Instead, Curtis argues that because the second counter

19  is not equivalent, the slope at the first counter must be less than 2.08%, and it is not.  Bluhm

20  measured the slope at the first counter to be 3.0%.  See Bluhm Dec. ¶ 14 & Ex. H.

21       Resolution of this claim depends on whether the second counter is substantially equivalent

22  to the first counter.  If the second counter is substantially equivalent, then there is no violation of

23  §§ 206.2.2 and 403.3 because there is unrebutted evidence that the slope is less than 2.0%.  If the

24  second counter is not substantially equivalent to the first counter, then there is unrebutted evidence

25  that the slope is greater than 2.0%.  Because the Court is denying both summary judgment motions

26  with respect to the height of the exterior food counter, summary judgment on this claim will also

27  be denied.

28

[11] Prior to the pre-trial conference, the parties are to meet and confer regarding whether this alleged barrier still exists.

1       8.     Tool Rental Counter Height – FAC ¶ 11(n)

2       The 1991 ADAAG requires that, where counters have cash registers and are provided for

3 sales or distribution of goods or services to the public," a portion of the counter cannot exceed 36"

4 in height.  See 1991 ADAAG § 7.2(1).  The 2010 ADAAG also mandates that sales and service

5 counters cannot exceed a height of 36".  See 2010 ADAAG § 904.4.1.

6       The Store has a tool rental area, and at the rental area there is a counter with several cash

7 registers, telephones, and credit/debit card readers.  See Bluhm Dec. Ex. K.  It is undisputed that a

8 portion of the counter has a height of less than 36".  See Bluhm Dec. ¶ 17; Wall Opp. Dec. ¶ 14.

9 Home Depot argues that the counter is in compliance with 2010 ADAAG 904.4.1 because it is less

10 than 36" tall.  Curtis argues that the 2010 ADAAG requires that check writing surfaces in

11 checkout aisles cannot exceed 34" in height.  See 2010 ADAAG §§ 902.3, 904.3.3.  Because the

12 counter is greater than 34", Curtis contends that there is a barrier.

13       Curtis acknowledges that the 1991 ADAAG determines whether there is a barrier.  See

14 Doc. No. 43-1 at pp. 5-6.  The relevant 1991 ADAAG provision cited by Curtis for this alleged

15 barrier is 1991 ADAAG § 7.2(1).  See id. at p.15.  That provision sets a height limit of 36", it does

16 not set a height limit of 34".  See 1991 ADAAG 7.2(1).  Because the counter is less than 36",

17 there is no violation of 1991 ADAAG § 7.2(1).

18       Furthermore, in terms of the 2010 ADAAG, the Court agrees with Home Depot's

19 characterization of the counter.  The tool rental counter does not appear to be a checkout aisle, as

20 that term is commonly understood.  See Bluhm Dec. Ex. K.  Rather, the picture of the tool rental

21 area depicts what would commonly be described as a sales or service counter.  See id.  Sales and

22 service counters are governed by 2010 ADAAG § 904.4, while checkout aisles are governed by

23 2010 ADAAG § 904.3.  Curtis's reliance on 2010 ADAAG § 904.3.3 is misplaced.

24       Because the tool rental counter is less than 36" in height, there is no barrier.  Summary

25 judgment in favor of Home Depot on this claim is appropriate.

26       9.     Maneuvering Clearance At Men's Restroom – FAC ¶ 11(q)

27       Under the 2010 ADAAG, for a latch-side push approach restroom door, a minimum of 42"

28 of maneuvering space is required.  See 2010 ADAAG § 404.2.4.1.  However, if a door-closer is

1    attached to the door, then an additional 6" of maneuvering space is required.  See id. at n.4.

2         Bluhm declared that he measured 46" of clearance between a drinking fountain and the

3    restroom door.  See Bluhm Dec. ¶ 18.  Because the Store's restroom door had a self-closing

4    mechanism, Bluhm declares that an additional 6" of maneuvering space is necessary, meaning that

5    48" of total clearance is required.  See Bluhm Opp. Dec. ¶ 19.  Home Depot does not dispute that

6    48" inches of clearance is required due to the self-closing door mechanism.  See 2010 ADAAG §

7    404.2.4.1 n.4.  However, as part of the reply, Wall declares that since Bluhm's 2014 re-visit, there

8    is no longer a door closer on the men's restroom.  See Wall Rep. Dec. ¶ 7.

9         Here, the dispute between the parties is due to the door closer.  Without a door-closer,

10   there is no dispute that more than 42" of maneuvering space is provided and that there would be

11   no barrier.  Because the door closer has been removed, and there is nothing to indicate that Home

12   Depot will put the door closer back on, there is no barrier and this claim is moot.  Cf. Hickman,

13   144 F.3d at 1143-44; Houston, 2014 U.S. Dist. LEXIS 12209 at *2-*3; Independent Living, 982

14   F.Supp.2d at 774.  Summary judgment in favor of Home Depot on this claim is appropriate.

15        10.    Covered Restroom Pipes – FAC ¶ 11(u)

16        Under the 2010 ADAAG, water supply and drain pipes under lavatories and sinks must be

17   insulated or otherwise configured to protect against contact.  See 2010 ADAAG § 606.5.

18        During his initial inspection, Bluhm noted that pipes under the men's restroom sinks were

19   not fully insulated so as to avoid contact.  See Bluhm Dec. ¶ 21 & Ex. N.  As part of Home

20   Depot's opposition, Wall declared that the pipes under the sinks are now wrapped to prevent

21   costumers from coming into contact with them.  See Wall Opp. Dec. ¶ 16 & Ex. 12.  During

22   Bluhm's December 2014 return inspection, Bluhm found that not all pipes were wrapped and that

23   a person in a wheel chair could still come into contact with hot pipes.  See Bluhm Opp. Dec. ¶ 21.

24   In reply, Wall declares that the pipes have been re-wrapped since Bluhm's return visit, and that

25   there are no exposed portions of piping that a customer could come into contact.  See Wall Rep.

26   Dec. ¶ 8 & Ex. 17.

27        Wall's reply declaration includes pictures of the sinks in the men's restroom at the Store.

28   See id.  Additional insulation has been added over some of the previously exposed pipes.  See id.

1  However, there are still some pipes that are exposed.  See id.  What the exposed pipes deliver or

2  whether the pipes otherwise pose a danger to a disabled customer is unknown.  Further, the

3  exposed pipes appear to be blocked or "boxed in" by other insulated pipes.  From the pictures, it

4  does not appear to the Court that the legs or knees of a customer who is in a wheelchair would be

5  in danger of touching the exposed pipe.  Cf. Wall Rep. Dec. Ex. 17 with 1991 ADAAG § 4.19.3

6  Fig. 31.  The configuration of the sinks in conjunction with the insulation that has been added

7  indicate that there is no longer a violation of 2010 ADAAG § 606.5.

8         Nevertheless, the exact measurements of the sinks are unknown, and Curtis has not had a

9  chance to respond to these pictures.  Out of caution, the Court will not grant summary judgment.[12]

10        11.    State Law Claims

11        Home Depot requests that the Court decline to exercise supplemental jurisdiction over

12  Curtis's state law claims.  The request is based on the premise that the there are no ADA

13  violations.  However, the Court has found two ADA violations, and summary judgment is being

14  denied as to six other alleged ADA barriers.  Because the Court has not resolved all of Curtis's

15  ADA claims, it will retain supplemental jurisdiction over Curtis's state law claims.

16

17  **B.     PLAINTIFF'S REQUESTED RELIEF**

18        1.     Injunctive Relief

19        Curtis has requested injunctive relief so that the alleged barriers may be removed.  Curtis

20  will be entitled to injunctive relief with respect to maintaining accessible routes to the Store's

21  entrances.  However, the Court is denying all summary judgment with respect to six other alleged

22  barriers.  Because this case remains on-going, the Court declines to issue an injunction at this time.

23  Once all alleged barriers have been finally determined, the Court will issue an injunction.

24        2.     Monetary Relief

25        A violation of the ADA is an automatic violation of the California Unruh Civil Rights Act.

26  See Cal. Civ. Code § 51(f); Jankey v. Lee, 55 Cal.4th 1038, 1044 (2012).  Under the Unruh Act, a

27

28  ─────────────────────
[12] Prior to the pre-trial conference, the parties are to meet and confer regarding whether a barrier still exists with
respect to the sink pipes.

1  prevailing plaintiff may recover *inter alia* a minimum statutory damages award of $4,000 per

2  violation.  See Cal. Civ. Code § 52(a); Jankey, 55 Cal.4th at 1044.  However, a plaintiff must

3  demonstrate that each encounter he had with a particular barrier denied him full and equal access

4  to a place of accommodation.  See Cal. Civ. Code § 55.56(a); Garcia v. Brown, 2012 Cal.Unpub.

5  LEXIS 4919, *4-*5 & n.2 (2012).[13]  A denial of full and equal access may be demonstrated if the

6  plaintiff shows that he experienced difficulty, discomfort, or embarrassment because of the barrier.

7  See Cal. Civ. Code § 55.56(c); Garcia, 2012 Cal.Unpub. LEXIS 4919 at *4-*5 & n.2.

8          Here, Curtis has declared without contradiction that each time he has encountered the

9  accessible route being blocked, he has experienced either difficulty or discomfort.[14]  If the route to

10  the nursery is blocked, Curtis must go to the main Store entrance and then wheel himself across

11  the Store to get to the nursery, and then repeat the process to leave.  See Curtis Dec. ¶ 31.  This

12  creates difficulty because Curtis has a manual wheelchair.  See id.  Further, when he needs to go to

13  the main entrance of the Store and the accessible routes are obstructed, he has to travel outside the

14  accessible route and into the path of travel for automobiles.  See id. at ¶ 30.  This causes Curtis

15  anxiety, stress, and discomfort that he may be hit by a car.  See id.  Curtis requests only $4,000 in

16  statutory damages.  See Doc. No. 43-1 at 21:11-14.

17          Home Depot does not challenge Curtis's evidence or arguments regarding statutory

18  damages, rather Home Depot focuses on the absence of barriers.

19          In the absence of additional argument from Home Depot, Curtis has met his burden.  On

20  many occasions, Curtis has experienced obstructed/unmaintained accessible routes that have

21  caused him discomfort and difficulty.  See Curtis Dec. ¶¶ 18-28, 30-31.  Summary judgment in

22  favor of Curtis for $4,000 in statutory damages under the Unruh Act is appropriate.  See Cal. Civ.

23  Code §§ 51(f), 55.56(a), (c); Jankey, 55 Cal.4th at 1044.

24  _____

25  [13] Despite state rules, the Court may consider unpublished state cases as persuasive authority.  See Employers Ins. of
Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

26  [14] Home Depot objects to portions of Curtis's declaration as being contradicted by portions of Curtis's deposition.
However, Home Depot failed to provide copies to the Court of either the cited deposition excerpts or Curtis's

27  deposition as a whole.  Parties who cite to depositions are required to submit courtesy copies of the deposition to the
Court.  See Local Rule 133(j).  Without at least copies of the cited deposition pages, Home Depot's objections amount

28  to unsupported assertions that material disputed facts exist.  Unsupported assertions do not create genuine disputes.
Agosto, 299 F.3d at 23; Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1982).

1

**CONCLUSION**

2      Both parties move for summary judgment.

3      With respect to the ten alleged ADA barriers, summary judgment in favor of Curtis on the

4 barriers alleged in Paragraphs 10(a) and 11(b) of the FAC is appropriate because the evidence

5 shows that Home Depot has not adequately maintained unobstructed accessible routes with widths

6 of 36". Summary judgment in favor of Home Depot will be granted as to the barriers alleged in

7 Paragraphs 11(n) and 11(q) because there never was a barrier as alleged in Paragraph 11(n) and

8 the barrier in Paragraph 11(q) has been remedied. Because there are either conflicting

9 measurements, or because Curtis has not had an adequate opportunity to respond, summary

10 judgment on the remaining six alleged barriers will be denied.

11      With respect to Curtis's state law claims, there is an insufficient basis to decline

12 supplemental jurisdiction. Further, the Court will decline to issue an injunction until a final

13 determination has been made with respect to each alleged barrier. However, as to statutory

14 damages under California law, Curtis declares that he only seeks $4,000.00. Because Curtis has

15 sufficiently met his burden, and Home Depot did not adequately refute Curtis's claim, summary

16 judgment in favor of Curtis for a statutory damage award in the amount of $4,000.00 will be

17 granted.

18

19

20      **ORDER**[15]

21      Accordingly, IT IS HEREBY ORDERED that:

22   1.   Home Depot's motion for summary judgment is GRANTED with respect to the claims

23        found in Paragraphs 11(n) and 11(q) of the FAC;

24   2.   Home Depot's motion for summary judgment is otherwise DENIED;

25

26   [15] The parties are to meet and confer regarding the barriers that remain at issue prior to filing the joint pre-trial statement (the Court will not accept separate pre-trial statements). Further, because there are conflicting
27 measurements, the parties are to address whether an impartial expert should be appointed in order to take measurements of the disputed barriers. See Local Rule 281(19). The Court has not decided whether to appoint an
28 impartial expert, but the Court expects the parties to discuss the advisability and logistics of such an appointment.

3.    Curtis's motion for summary judgment is GRANTED with respect to the claims found in Paragraphs 10(a) and 11(b) of the FAC and as to Curtis's claim for $4,000 in statutory damages under the California Unruh Act; and

4.    Curtis's motion for summary judgment is otherwise DENIED.

IT IS SO ORDERED.

Dated: __January 23, 2015__                 _____

                                            SENIOR  DISTRICT  JUDGE